United States District Court
Southern District of Texas
**ENTERED**
May 02, 2019
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KATHERINE ANN MIMS, *et al.*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 4:17-CV-103 |
| CANADIAN HOME ROTORS, INC., *et al.*, | § § § | |
| Defendants. | § | |

**MEMORANDUM & ORDER**

Before the Court is Defendants' Motion for Summary Judgment filed by CHR International, Inc., Safari Helicopters, Inc., Echo Materials, Inc., Tristate Helicopter, Inc., Bobby J. Baker, and Letitia D. Baker (Doc. No. 55). Plaintiffs[1] moved for an extension to respond to Defendants' Motion for Summary Judgment (Doc. No. 56), which the Court granted (Doc. No. 57). The Plaintiffs were given until December 21, 2018 to respond, but failed to do so. Despite failing to respond to the actual dispositive motion, Plaintiffs filed a Motion to Strike or Limit Expert Testimony of Bobby Baker (Doc. No. 60).

I. **The Facts Established by the Summary Judgment Evidence**

This dispute follows a helicopter accident on January 16, 2015 that resulted in the death of Michael Gene Mims (hereinafter, the Decedent). Plaintiffs filed this suit in their individual capacities as wrongful death beneficiaries of Decedent. Lead Plaintiff Katherine Ann Mims also filed suit in her capacity as the representative of her deceased husband's estate, and SMIMCO, LLC filed suit as the named owner of the helicopter.

---

[1] Plaintiffs include Katherine Ann Mims as surviving spouse and as representative of the Estate of Michael Gene Mims (deceased), Robert Mims, Kevin Mims, and David Mims (the adult sons of Michael Gene Mims), and Bobby Mims (father of Michael Gene Mims), and SMIMCO, LLC, the Decedent's company and named owner of the Safari Helicopter.

1

In November of 2014, the Decedent, in his capacity as President of SMIMCO, LLC, purchased a Safari 400 helicopter from its prior owner, Jim Benson, in used/pre-owned condition.[2] The helicopter was a two-seater and had a "two blade main rotor and a tail rotor for anti-torque." (Doc. No. 1 at 9). Benson originally purchased the helicopter in 2010 from CHR International, Inc., and had flown the helicopter for a number of years. The helicopter was originally built by Bobby Baker ("Baker") from a kit designed by Canadian Home Rotors, Inc.[3] Defendants allege that the aircraft was classified and labeled as an "experimental-amateur built aircraft." (Doc. No. 55 at 5). Both parties agree that the helicopter was registered with the Federal Aviation Administration ("FAA") under "tail number" N416JB. (Doc. No. 55, Ex. D at 69).

The Court assumes that the parties dispute certain aspects of the accident, but the undisputed facts seem to be as follows. On Friday, January 16, 2015 around 12:30 p.m., the now deceased Mr. Mims was flying the Safari 400 helicopter around his neighborhood bordering The Woodlands near Conroe, Texas. Eyewitness David Snow ("Snow") described the helicopter as flying at an altitude of about 500 feet, just before the accident. (Doc. No. 55, Ex. E at 18). Snow also described watching from his backyard as pieces of the backend of the helicopter began to detach mid-flight, making "clanging" and "pinging" noises. (*Id.* at 11). Several seconds later, Snow watched the helicopter fall behind the tree line and heard it hit the ground. (*Id.* at 23). He called 911 and headed towards the site of the crash. Upon arrival, he did not see fire, but saw smoke and pieces of the helicopter strewn about. He described the helicopter as "squished." (*Id.* at 24). Snow stated that the Decedent was still inside the helicopter when emergency personnel

---

[2] Jim Benson was a Defendant in this suit, but was subsequently dismissed by agreement between the parties. (Doc. Nos. 48, 49).
[3] Plaintiffs assert (and Defendants do not dispute) that Canadian Home Rotors, Inc. ceased operations and was acquired by co-defendant CHR International. (Doc. No. 1 at 3). Defendants, however, dispute whether the latter assumed the liabilities of the former.

arrived. (*Id.* at 25).

Plaintiffs' pleadings attribute the crash to Defendants' manufacture of a faulty horizontal stabilizer bar, while Defendants allege that the crash was instead caused by a number of mistakes made by the Decedent. Plaintiffs filed this suit making the following claims against the following Defendants:

- Against CHR International, Inc. d/b/a Safari Helicopters and ECHO Materials, Inc.: Negligence, Strict Liability – Defective Manufacture, Defective Design, and Marketing Defect, Violations of the Deceptive Trade Practices Act (DTPA), Breach of Warranty, Negligent Misrepresentation, Fraudulent Inducement, Alter Ego Liability, and Successor Liability.[4]

- Against Bobby and Letitia Baker: Negligence, Strict Liability – Defective Manufacture and Strict Liability – Defective Design.

(Doc. No. 1 at 13–28). Defendants deny all of Plaintiffs' allegations. (Doc. No. 55).

## II. Standard of Law

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)). Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is

---

[4] Defendants do not move for summary judgment on Plaintiffs' successor liability theory; perhaps because Plaintiffs do not appear to have asserted successor liability as a cause of action, but as a theory of recovery based on Safari Helicopters, Echo Materials, and Tristate Helicopters' alleged acquisition of CHR International's assets. (Doc. No. 1 at 12, 19). Since the claims against Safari Helicopters, Echo Materials, and Tristate Helicopters are all dismissed, Plaintiffs' successor liability theory is moot.

3

genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255.

Local Rules 7.3 and 7.4 of the Southern District of Texas state that a response to a motion will be submitted to the judge within twenty-one (21) days after filing and that the failure to respond will be taken "as a representation of no opposition." Rule 7.4(a) plainly states that such responses must be filed by the submission date, which in this case, passed long ago.

Therefore, the local rules would allow the Court to grant Defendants' motion as it should be considered unopposed. However, the Fifth Circuit has explained that "although we have endorsed the adoption of local rules that require parties to file responses to opposed motions, we have not approved the automatic grant, upon failure to comply with such rules, of motions that are dispositive of the litigation." *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (first citing *Johnson v. Louisiana*, 757 F.2d 698, 707-09 (5th Cir. 1985); then citing *Ramsey v. Signal Delivery Serv.*, 631 F.2d 1210, 1213-14 (5th Cir. 1980)). In other words, where a party does not respond to a summary judgment motion, such failure does not permit the court to enter a "default" summary judgment. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988). A court, however, is permitted to accept the movant's facts as undisputed when no response or opposition is filed. *Id.* Normally, "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence." *Bookman v. Schubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (citing *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991)). On summary judgment, factual allegations set forth in a verified complaint may be treated the same as when they are contained in an affidavit.

4

*Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) (citing *see Huckabay v. Moore*, 142 F.3d 233, 240 n. 6 (5th Cir.1998)). In this case, the Court has found no evidence that Plaintiffs have verified their pleadings. *Id.* Although this failure does not permit the court to enter a "default" summary judgment, Plaintiffs have not filed a response to the motion and Plaintiffs' pleadings are not verified, and, therefore, Plaintiffs have presented no summary judgment evidence to dispute Defendants' version of the facts or their arguments supporting summary judgment. *Stone v. U.S.*, No. Civ. A. 1:09-CV-427, 2011 WL 3652758, *2 (E.D. Tex. July 22, 2011).

### III. Plaintiffs' Objection to Summary Judgment Evidence

Plaintiffs have filed a motion to strike or limit the expert testimony of Bobby J. Baker, arguing that Baker is not qualified to offer opinions on accident investigation or reconstruction, and that, regardless of his qualifications, his expert report should be stricken as Defendants failed to timely produce the report pursuant to FED. R. CIV. P. 26(a)(1)(D). (Doc. No. 60). Defendants respond first that Baker is qualified to provide expert testimony on this matter because he is "a certified Airframe and Powerplant mechanic, a licensed private aircraft pilot with high performance, complex, taildragger type ratings, as well as a licensed rotorcraft pilot." (Doc. No. 61 at 4). Defendants also argue that they were not required to produce Baker's report because he is not a retained expert in this case. (*Id.* at 9). Under FED. R. EVID. 702, an expert witness may provide opinion testimony only if

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods of the facts to the case.

In deciding Defendants' Motion for Summary Judgment, the Court does not rely on Baker's opinions on the causation of the accident. As such, the Court declines to make a determination on Baker's qualifications and overrules Plaintiffs' Motion to Strike at this time as being moot.

Next, in response to Plaintiffs' timeliness argument, Defendants point out that while they produced Baker's report in October of 2018 (six months after the deadline), "any prejudice to Plaintiffs caused by Defendants' failure to provide Mr. Baker's report at the time of his designation was cured when Plaintiffs were allowed to question Mr. Baker during his November 16, 2018 deposition." (Doc. No. 61 at 10). Defendants also argue that they were not required to produce a written report to Plaintiffs because Baker is not a retained expert in this case. (Doc. No. 61 at 9). Notably, Defendants designated Baker as an expert witness on June 6, 2018 (approximately two weeks after their May 20, 2018 expert witness deadline). (Doc. Nos. 40, 43). Finding that Plaintiffs still had an opportunity to depose Baker after Defendants produced his report and consequently any untimeliness was harmless, the Court declines to strike Baker's report pursuant to FED. R. CIV. P. 37(c)(1), but, as stated above, the Court does not use that report in any fashion in resolving this motion.

## IV. Defendants' Motion for Summary Judgment

### A. Negligence

Defendants have denied that they were negligent in any fashion. "A cause of action for negligence in Texas requires three elements. There must be a legal duty owed by one person to another, a breach of that duty, and damages proximately caused by the breach." *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002).

There is no evidence in the record setting out the appropriate standard of care or demonstrating that any of the Defendants failed to conform to the appropriate standard of care.

Under *Celotex*, Plaintiffs have the burden to produce sufficient evidence to raise a fact issue as to the essential elements of their case. *See Celotex*, 477 U.S. at 322–23. Plaintiffs have not done so here, and summary judgment in favor of Defendants is consequently warranted on Plaintiffs' negligence claims.

### B. Products Liability Claims

Defendants have denied that they are liable under the pleaded theories of strict liability and have moved for judgment on each theory. (Doc. No. 55 at 18–25).

#### 1. Strict Liability – Defective Manufacture

A manufacturing defect exists when a product deviates, in its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 434 (Tex. 1997) ("Under Texas law, a plaintiff has a manufacturing defect claim when a finished product deviates, in terms of its construction or quality, from the specifications or planned output in a manner that renders it unreasonably dangerous."). A plaintiff must prove that the product was defective when it left the hands of the manufacturer and that the defect was a producing cause of the plaintiff's injuries. *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 844 (Tex. 2000).

Plaintiffs provide no evidence indicating that this particular Safari 400 deviated from the planned specifications, nor that the product was defective when it left the manufacturer. *See id.* As such, summary judgment in favor of Defendants is warranted as to Plaintiffs' defective manufacture claims.

#### 2. Strict Liability – Defective Design

Similarly, Plaintiffs provide no evidence demonstrating a fact issue with regard to any element of their defective design claims. Plaintiffs allege that "[u]pon information and belief the

7

materials used to manufacture the horizontal stabilizer bar failed in flight causing the subsequent crash and fatality." (Doc. No. 1 at 12). Under Texas law, the elements of a products liability claim based on an alleged design defect are: "(1) the product was defectively designed so as to render it unreasonably dangerous; (2) a safer alternative design existed; and (3) the defect was a producing cause of the injury for which the plaintiff seeks recovery." *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 311 (Tex. 2009); TEX. CIV. PRAC. & REM. CODE § 82.005(a); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 788–89 (Tex. 1967) (adopting the Restatement (Second) of Torts § 402A (Am. Law Inst. 1965)). Expert testimony is required to "bridge the analytical gap" in determining causation. *Driskill v. Ford Motor Co.*, 269 S.W.3d 199, 205 (Tex. App.—Texarkana 2008, no pet.) (finding in favor of the defendant where there was no expert testimony "bridging the analytical gap between the origin of a fire in the left rear area of an engine compartment and the conclusion that the [speed control deactivation switch] in that area was the cause-in-fact of the fire."). Here, Plaintiffs have failed to offer any evidence of a defective design or that any such defect was the cause of the accident. Summary judgment is once again warranted in favor of Defendants as to this cause of action.

### 3. Strict Liability – Marketing Defect

"A marketing defect occurs when a defendant knows or should know of a potential risk of harm presented by the product but markets it without adequately warning of the danger or providing instructions for safe use." *Gerber v. Hoffmann-La Roche Inc.*, 392 F. Supp. 2d 907, 914 (S.D. Tex. 2005) (citing *USX v. Salinas*, 818 S.W.2d 473, 482 (Tex. App.—San Antonio 1991, writ denied). "A marketing defect cause of action consists of five elements: 1) a risk of harm that is inherent in the product or that may arise from the intended or reasonably anticipated use of the product must exist; 2) the product supplier must actually know or reasonably foresee the risk of

harm at the time the product is marketed; 3) the product must possess a marketing defect; 4) the absence of the warning and/or instructions must render the product unreasonably dangerous to the ultimate user or consumer of the product; and 5) the failure to warn and/or instruct must constitute a causative nexus in the product user's injury." *Salinas*, 818 S.W.2d at 482–83. "[I]n a marketing defect case, the injured plaintiff must raise a fact issue on the question of whether a warning or instruction should have been provided." *Id.* at 483. "[T]he plaintiff must show that the product supplier knew or should have known of the risks at the time of marketing." *Id.* "Foreseeability is measured in terms of those dangers which are reasonable to anticipate, and the product supplier is held to the status of an expert and is assumed to possess knowledge of the latest scientific advances." *Id.* at 484.

Once again, Defendants have denied liability under this cause of action. Plaintiffs fail to provide evidence demonstrating a genuine issue of material fact remains regarding any of the five elements listed above. By contrast, Defendants provide Benson's deposition transcript, in which he testifies that at all times (including when he sold the helicopter to the Decedent) there were very large signs in the aircraft which stated that the helicopter was in an experimental category of aircraft. (Doc. No. 55, Ex. D at 143, 163–65). Defendants contend that the Decedent had reason to know that the helicopter was experimental and that the FAA does not hold experimental helicopters to the same standards as a "regular class" of helicopters; accordingly, Defendants argue that there was no failure to warn. (*See* Doc. No. 55 at 6). Plaintiffs have failed to meet their burden of demonstrating that a genuine issue of material fact remains with regard to these elements of their marketing defect cause of action. Thus, summary judgment in favor of Defendants as to Plaintiffs' products liability claims is granted.

**C. Violations of the Defective Trade Practices Act (DTPA) & Breach of Warranty**

The DTPA provides consumers with a cause of action for false, misleading, or deceptive acts or practices. TEX. BUS. & COM. CODE § 17.50(a)(1); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex. 1980). The DTPA defines a "consumer" as "an individual . . . who seeks or acquires by purchase or lease, any goods or services." TEX. BUS. & COM. CODE § 17.45(4). Privity of contract with a defendant is not required for the plaintiff to be a consumer. *E.g., Home Sav. Ass'n v. Guerra*, 733 S.W.2d 134, 136 (Tex. 1987); *Kennedy v. Sale*, 689 S.W.2d 890, 892–93 (Tex. 1985); *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 707 (Tex. 1983); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540–41 (Tex. 1981). In order to prevail on a DTPA claim, a consumer must also establish that each defendant violated a specific provision of the Act, and that the violation was a producing cause of the claimant's injury. TEX. BUS. & COM. CODE § 17.50(a); *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996) (citing *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995)).

Defendants do not dispute, at least for purposes of this motion, that SMIMCO, LLC, as the named owner of the helicopter at issue, was a consumer as defined by the DTPA; rather, Defendants dispute whether they violated any specific provision of the DTPA. Plaintiffs specifically allege that Defendants "committed the following wrongful acts":

    a. Represent[ed] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantifies which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which the person does not, Tex. Bus. & Com. Code §17.46(b)(5);

    b. Represent[ed] that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model, if they are of another, Tex. Bus. & Com. Code §17.46(b)(7);

    c. Knowingly ma[de] false or misleading statement of fact concerning the need for parts, replacement, or repair service, Tex. Bus. & Com. Code §17.46(b)(13); and

    d. breach[ed] express and implied warranty.

(Doc. No. 1 at 18). Plaintiffs point to a marketing brochure from CHR International, which described the Safari 400 helicopter as "rugged" and "reliable." (Doc. No. 1 at 10). According to Plaintiffs' complaint, the Decedent relied on this description when he called Benson and purchased the used Safari 400 helicopter. (Doc. No. 1 at 11). Texas courts consider three elements when deciding an alleged DTPA violation: "(1) the specificity of the alleged misrepresentation, (2) the comparative knowledge between the buyer and seller, and (3) whether the representation concerns past or present conditions, or future conditions." *Cleveland Mack Sales, Inc., v. Foshee*, No. 14-00-00059-CV, 2001 WL 1013393, at *4 (Tex. App.—Houston [14th Dist.] Sept. 6, 2001, pet. denied) (citing *Humble Nat'l Bank v. DCV, Inc.*, 933 S.W.2d 224, 230 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). Plaintiffs ask the Court to hold that the description "rugged" and "reliable" in a brochure about Safari 400 helicopters constitutes a specific representation, yet Plaintiffs provide no evidence in support of this claim. Moreover, the evidence in the record demonstrates that the brochure was not describing the specific helicopter at issue (which was pre-owned and assembled in 2010), but was instead describing the new Safari 400 helicopters. (Doc. No. 55, Ex. F) ("Depend on Your New SAFARI 400"; "2014 SAFARI 400"). There is no evidence demonstrating a genuine issue of fact concerning whether Defendants made a specific misrepresentation to the Decedent or that any such representation was breached. *See Cleveland*, 2001 WL 1013393, at **5–6 (discussing the difference between mere puffery and material misrepresentations under Texas's law). On this summary judgment record, the Court cannot find in Plaintiffs' favor.

  **D. Negligent Misrepresentation**

    Plaintiffs also claim that Defendants made negligent misrepresentations. Under Texas law,

11

a plaintiff alleging negligent misrepresentation must establish: "(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991). A party's common-law duty not to engage in a negligent misrepresentation encompasses a duty not to make a representation that supplies false information about an existing fact under certain circumstances. *See Lindsey Construction, Inc. v. AutoNation Fin. Servs.*, 541 S.W.3d 355, 366 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Mañon v. Solis*, 142 S.W.3d 380, 388 (Tex. App.—Houston [14th Dist.] 2004, pet. denied).

Plaintiffs' allegations that Defendants misrepresented the quality of the Safari 400 helicopter by advertising that the helicopter was "rugged" and "reliable" fail for two reasons. First, similar to the discussion above concerning Plaintiffs' claims under the DTPA, these statements are not material representations of fact, but are opinion or mere puffery, nor were these statements made about this particular helicopter. *Martin v. Ford Motor Co.*, 914 F. Supp. 1449, 1456 (S.D. Tex. 1996) ("Even if the Court were to accept Plaintiffs' averments in their Complaint regarding the content of Ford's advertisements, which allege that Ford stated 'Have you driven a Ford lately?' and 'Quality is job one,' the existence of false or misleading statements could not be found because the former completely lacks factual content and the latter cannot be reasonably construed to include a particular representation of safety."). "Texas courts have held that opinion and 'puffing' are not actionable." *Sadovsky v. Hassler*, No. 95-50885, 1996 WL 76848, at *8 (5th Cir. Dec. 16, 1996) (citing *Autohaus, Inc. v. Aguilar*, 794 S.W.2d 459, 462 (Tex. App.—Dallas, 1990 writ denied)).

More importantly, Plaintiffs fail to provide evidence for any of the other elements of this cause of action. There is no evidence in the record indicating that the Decedent (or any Plaintiff) reasonably relied on these representations when the helicopter was purchased—in used condition—from Benson, a third-party seller. Defendants point out that the brochure that is the basis for Plaintiffs' misrepresentation claims specifically states "Depend on Your *New* SAFARI 400." (Doc. No. 55, Ex. F) (emphasis added). Accordingly, Defendants contend that even if the Court were to find that the representations listed above constituted facts, these "facts" would clearly be limited to the new Safari 400 helicopters, not the preowned, five-year-old model. (Doc. No. 55 at 27). Where Plaintiffs do not provide evidence to the contrary or otherwise fail to demonstrate that a genuine issue of material fact remains, summary judgment in favor of the Defendants as to Plaintiffs' negligent misrepresentation claims is granted.

### E. Fraudulent Inducement

Plaintiffs have also alleged that Defendant CHR International fraudulently induced the "Decedent, in his capacity as President of SMIMCO, LLC." (Doc. No. 1 at 25). "Fraudulent inducement is a species of common-law fraud that shares the same basic elements: (1) a material misrepresentation, (2) made with knowledge of its falsity or asserted without knowledge of its truth, (3) made with the intention that it should be acted on by the other party, (4) which the other party relied on and (5) which caused injury." *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). As discussed in parts C and D above, Defendants deny having made any misrepresentations to the Decedent or SMIMCO, LLC. (Doc. No. 55). Again, Plaintiffs provide no evidence demonstrating that a genuine issue of material fact remains as to any element of this cause of action—as such, summary judgment in favor of Defendants is granted.

### F. "Alter Ego Liability"

Plaintiffs have alleged that CHR International, Safari Helicopter, Echo Materials, and Tristate Helicopters ("corporate Defendants") are liable for the acts and/or omissions of Jim Benson, Bobby Baker, and Letitia Baker under an alter ego theory. An alter ego theory "applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice." *Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986). In other words, alter ego applies where a plaintiff seeks to hold individual shareholders liable by piercing the corporate veil. *See id.* Here, it is just the opposite—Plaintiffs seek to hold the corporate Defendants liable for either the Bakers' or Benson's actions. Thus, alter ego is inapplicable.[5]

Plaintiffs also seek to hold the corporate Defendants liable for Benson's actions under the theory of agency. Plaintiffs' agency theory of liability similarly fails. Agency theory is based on the concept of apparent authority, and in Texas, apparent authority is based on estoppel. *See Baptist Mem. Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998). This authority "may arise either from a principal knowingly permitting an agent to hold herself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise." *Id.* (quoting *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984)).

A prerequisite to a proper finding of apparent authority is evidence of conduct by the principal relied upon by the party asserting the estoppel defense which would lead a reasonably prudent person to believe an agent had authority to so act.

---

[5] Even if the theory were applicable, Plaintiffs have provided no evidence to support their claims that either Benson or the Bakers held the requisite "unity" with the corporate Defendants such that the "separateness of the corporation had ceased." *See Castleberry*, 721 S.W.2d at 272.

14

Thus, to establish a CHR International's liability for Benson's actions based on agency, Plaintiffs must demonstrate that: (1) the Decedent had a reasonable belief that Benson was the agent or employee of CHR International, (2) such belief was generated by CHR International affirmatively holding Benson out as its agent or employee or knowingly permitting Benson to hold himself out as CHR International's agent or employee, and (3) the Decedent justifiably relied on the representation of authority. *See Baptist Mem. Hosp.*, 969 S.W.2d at 949. Plaintiffs have failed to demonstrate that a genuine issue of fact exists concerning whether the Decedent had any belief (much less a reasonable one) that Benson worked for CHR International or that CHR International's acts or omissions allowed Benson to hold himself out as an agent of CHR International. In his sworn affidavit, Benson states that he is not, nor has he ever been, employed by or worked as an agent for CHR International. (Doc. No. 55, Ex. D). Further, Benson states that any statements made by him about the Safari 400 helicopter that he sold to the Decedent were his "opinions derived from [his] personal experience with Safari Helicopter[s]." (Doc. No. 55, Ex. C at 2).[6]

## V.   Conclusion

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**.

It is **SO ORDERED**.

Signed at Houston, Texas, this 2nd day of May, 2019.

Andrew S. Hanen
United States District Judge

---

[6] Importantly, for Plaintiffs to prevail on any theory of vicarious liability, they would initially have to prove (or at least, at this stage, raise a fact issue to the effect) that the alleged agent (here, Benson) was liable for the underlying act. As shown above, they have not done this.